Opinion of the Court, by
Judge Mills.
THÍS is a warrant of forcible detainer, brought in the nam,e of “ Robert Poage, 4rc.” against the appellants. The inquest in the country was found for Poage, and the appellants, by traverse, brought it into the circuit court, where a trial was had and a verdict found for the appellants. On motion the court granted a new trial, and at the next trial a -verdict was found and a judgment rendered against the appellants, from which they have appealed.
There was an exception to the opinion, of the court granting the now trial, and the evidence, was. spread upon the record. The new trial was granted on. the ground that the first verdict was contrary, to law. and evidence, and it is now assigned for error, that the.court ought not to have granted a new trial. We have not thought it necessary to recite the evidence then given, because most, if not ajl ofit, was given on the second al. We shall b.arely observe, in reply to this assignment, that although the evidence then given may appear somewhat contradictory at the first reading, yet when it is more nicely examined, it can all be reconciled, and it made out a ease which in law entitled the ap-pellee to a verdict, and after- decision of the inferior court, this, court ought not to disturb the proceedings.
On the last trial, various points of law were made and decided in the court below, and a new trial moved for and overruled, and, exceptions taken to all; and the same points are brought before us by the assignment of error, which now claim our attention.
On this trial it appeared that a certain James.Rice applied to the appellee for. a lease, of the premises in dispute. The appellee declined at first' giving, the lease, because there was. a tenant on the premises, which he did not wish to disturb. Rice replied, that he would-buy out the tenant; and on these conditions, the appel-lee agreed to let Rice have the farm, and be was to make additional improvements, and to stay on the land until the price paid the first tenant and these improve.; ments, were made-up in rent..
■ Written a-fwe<nT[,on'e0 andThe wid-«wofíliee.
The witnesses could not. recollect that the appellee fixed any precise time for the lease, but only observed, that he wished to keep the land for his children, and none of them were yet grown, and Rice might keep it. probably for five, six, seven, or eight years,-or more. The appellee then employed Rice to belt the trees on a portion of the adjoining land, and paid him the money for doing so. Shortly afterwards, Rice bought out the tenant then on the land, and made the stipulated belting of trees, and resided thereon until 1814, when he died.
Before his death, he bought a claim upon the land, and set up title thereto in his own right.
After hrs death, his widow administered on his estate, and was on the land, and in an interview between her and the appellee, it was understood that the time Rice was to have the place had not quite elapsed, but would shortly expire, and she hesitated to surrender the possession, fearing that by doing so, she might prejudice the heirs of Rice, who set up claim thereto, under the title purchased by their ancestor. To settle, however, the extent of the appellee’s lease, they entered into the following writing:
“ Memorandum of an agreement verbally entered into on thq 20111 May, 1815, between George Poage, sen. a^orney in fact for Robert Poage, of Mason county, of the one part, and Anne Rice, of (he county of Greenup, of the other part, that js to say: That James Rice, deceased, husband of Anne Rice, took possession of the plantation on which she now lives, unde*'the authority of Robert Poage, and continued qn the same during his life, making such improvements as were equal to the rents of the same; but previous to his death, haying purchased an interest }n the claim of William Marshall, from George Brooks, which covers the said farm, and Anne Rice not knowing that she is justifiable in giving up the possession, lest she should injure the title of the heirs of James Rice, and not being willing to enter into a suit about the same, it is hereby agreed that the said Anne shall have peaceable possession of the premises for four years from the said 20th May, 1815, for the improvements, &c. done on said premises by said J. Rice, At the expiration of said term, peaceable possession is to be delivered to said Robert Poage, reserving the benefit to the heirs of said Rice, of the purchase made of *125 George 38rooks; and if any dispute arises between --, it is to be considered in the same light a» if it had been tried on the 20lh of May, 1815.”
[f] A written pfai^ti/r aiiti a person under whom the duces^Tshow the defendants after-proves such person was the^lainttfr js competent evidence,
[2] Dcdara-of tPh* fhedefendant. succeeded, as ip <be man-nor they cn-tpro-l end held, made wh-’. t they W re hi ¡)OS-sciden, but not when they enteredj is not competent.
*125 This writing was signed by the parties and dated on the 6th of October, 1815.
Before the four years mentioned in the foregoing instrument had expired, one of the appellants entered, with Mrs. Rice’s approbation, and she moved away after the expiration of the term. The appellant who had so entered, leased a part of the premises to the other ap-' peilants, a&d since she moved away, he claims to hold the possession of the land for Rice’s heirs, under the adverse claim purchased by Rice, the intestate.
The appellants gave evidence conducing to show that the tenant, from whom Rice had purchased the premises, got it from a third person, and that the possession had passed through the hands of several, before ii came to Rice; but whether all those persons held under Poage, the appellee, or under some other person, the proof did not show.
Various motions were made to exclude evidence and instruct the jury, by the appellants, and some by the appellees, which the court decided, and the appellants excepted.
(1) The first objection taken to the evidence, wms by the appellants, to exclude the instrument of writing between the appellee and Mrs. Rice, as improper evi-deuce.
We can see no ground for this objection. The evi-deuce strongly conduced lo show, that one of the appel-Jants entered under her, after the execution of the writing, and the writing itself proved that she was (he tenant of the appellee; of course, they would be bound to hold and surrender in the same manner and time, to which she was bound. Besides, it was competent for Mrs. Rice, as the administratrix of her husband, to sell his lease or dispose of it as a chattel interest, and to set-tie and adjust with the appellee, the remainder of the term to which Rice was entitled at his death, to pay for his improvements or money expended.
(2) The rest of the evidence objected to, and rejected by the court, consisted ofthe declarations of who had preceded Rice himself, as to the manner in which they obtained and held ihe premises, and also of another person, who stated that he had leased to one of *126 them. We see no error in rejecting this evidence. The persons themselves were more competent (o prove how they held, than their declarations, not on oath, could be. Besides, these declarations were made, not at the time of their entry, as part of the res gestee, explaining how they entered, but long afterwards, and had all the characteristics of hearsay, -a,ud were, therefore, properly rejected.
[3] The last section of the act concevn-ins; forcible entries and detainers, applies exclusively to forcible entries, and not to detainers.
[4] The addition of 4 &c.’ to the name of the plaintiff in the ■writ, does not mean other persons.
[o] The refusal ofinstruc-tions predicated on facts which the evidence did not conduce to prove, is no ground of complaint.
[6j A lessee who enters midor a lease void by t he statute,is a tenant, and subject to the proceeding under the statute for forcible de-tainer.
The instructions to thejury asked by the appellants were sixteen in number. The court below gave seven of them and overruled the residue. As to those given, the appellants have no. right to complain; the rest demand our attention,
(3) The court was asked to instruct the jury, that if they should believe that Poage had not the possession in fact, at the time of the detainer complained of, he could not recover.
How Poage could have the possession in fa.ct, and. his adversary at the same time detain it from him, is a paradox involved in (he instruction, asked, which is left to' the counsel to solve, who made it. Suffice it to say, that the position assumed, is based upon the palpable mistake of applying the last section of the act to forcible detainers, which applies exclusively to forcible entries,
(4) The next instruction asked and refused, was, that if the appellee had the sole possession, the warrant in the name of u Rubert Poage, &c.” could not be maintained. This was attaching a greater meaning to the “ i^c.” than we can find in it, if it had any. It might more-readily mean the title or addition to the name of Robert Poage, than other persons concerned with him in interest.
(5) The next instruction asked, was, that if the jury should believe that the tenants were tenants at will to the appellee, he could not recover, unless he had gh en six months’ notice to quit, or should havé shown, by way. of avoiding the necessity "of notice, that the tenants had refused to restore the possession. Risa sufficient answer to this, that the evidence did not conduce to prove a tenancy at will in the appellants, or any case suited, to the instruction. The same may be said of. the tenth, and twelfth instructions, and they need not be recited.
(6) The fifth in number, is to this effect: That if, from the evidence, the jury should believe that the original contract between Poage and James Rice, was for a term of more than five years, and that the same was by parol., *127 Said contract was void, and no tenancy was created, such as to authorize this proceeding, although Rice took the possession under the contract.
[7] It is not sufficient for the plaintiff to show that the defendant or his • predecessor ieased the premises from him; it must appear that the possession was acquired from the ' plaintiff — Ar.
[8] Widow and heirs left in possession at the death of a tenant, who entered under the plaintiff, are held to have entered me-diately under him, and subject to this proceeding.
*127 This instruction is framed with an eye to the first' Section of an act of 1796, (1 Dig. L. K. 312,) which provides, “that no estate of inheritance or lor a term of more than five years, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered.” It is somewhat doubtful whether the original lease by parol, to Rice, the intestate, by Poage, was or was not for more than five years, and if it was, whether it would be good for five years; or, indeed, whether, as the term was indefinite, it ought to be construed any thing else than a tenancy from year to year. But whichsoever of these might be its terms or operation, we are satisfied that if Rice, the intestate, entered under it, it created a tenancy, on which the writ of forcible detainer might operate, for a holoing over, as decided by this court in the case of Haynes vs. Adams, 3 Marsh. 149; and such would be its operation, however void the lease might be, between the lessor and lessee, with regard to the obligations of the former to let the latter remain in possession. Such we take to be the application and operation of the act which authorizes these proceedings, and the court did not err in overruling this application.
(7) In the 6th instruction, the court was asked to inform the jury, that if Mrs. Anne Rice didnotobiain the possession from Poage, he cannot recover against her rights, or the rights of the tenants under her, the written agreement she had entered into with Poage, notwithstanding.
It is true, this court has decided, thaf under the 16th section of the act of assembly regulating writs of forcible entry and detainer, it is not only necessary that there should be a taking of a lease and holding over, but also, an entry or acquisition of the possession, under and from the lessor, to support this writ; so that holding beyond the terms of a lease, when possession was not taken from the landlord, but acquired from some other quarter, was not a forcible detainer, intended by the act.
(8) But it never was intended in these decisions, that cases where the heir or widow should be loft it) possession, at the death of the tenant, or whore one tenant should purchase and receive from another, should be *128 excluded from the operation of the act; for in all such cases, the last tenant or sub tenant, must he held as entering, though not immediately, úndef the landlord, and as subject to all the remedies existing against the first tenant; otherwise, a death ora sale would defeat the remedy given, which could not have bceii intended by the Legislature. This instruction was, therefore, properly refused.
[9] A defendant who has attempted to hold under another claim, or insisted in his defence that he had not entered under the plaintiff, must be taken to have refused to surrender; and, therefore, cannot complain that the court refused to instruct the jury, that, the plaintiff could not recover unless they believed he had. refused.
[10] The act does not embrace cases of forcible de-tainer before its passage; but does apply to cases where the lease was made before the act and detention afterwards.
(9) The eighth instruction not given, was to this effect: That if the jury should believe that the traversers never refused, as tenants, to give up possession, after their term expired, the appellee could not recover.
The proposition contained in this instruction, is sound and unexceptionable in point of law; but still we are disposed tojustify the inferior court in refusing to give it as an instruction. The appellants had attempted to hold under an adverse claim, and this has been considered by this court, as sufficient evidence of a refusal, or equivalent thereto. They had made this appear by their own evidence, and had also given evidence conducing to show that, they had never entered under the appellee. It was, therefore, so preposterous for them to ask the court to give even a sound instruction, which, under, some circumstances, might have been availing, but which, under their own proof, could have been of no avail, and even contrary to their whole defence, that the court could not have erred in being silent when such application was made.
(10) The last instruction which we shall notice, is the ninth in number. The court was asked to tell the jury, that if the lease made by Poage, was previous to the passage of the act which gave birth to this remedy, the. proceedings under it were irregular, and the case must be redressed by the previous law. It has been decided by this court, that the act was prospective iu its terms, and did not embrace cases of forcible detainer, which existed prior to its passage; but it is at the same time admitted, that it embraces ail cases subsequent, and it is wholly immaterial whether the lease was made before or afterwards, so that the holding over did not happen until after the act took effect. See Reed vs. Raw-son, 2 Litt. Rep. 191.
(11) The act is broad enough in its terms to embrace tenancies existing at its passage, and it is certainly competent for the Legislature to furnish a more speedy *129 remedy to punish the wrong of a forcible detention, or to enforce the contract of the tenant by causing him to surrender, although he had made the contract before the act. There is no restraint upon such a salutary exercise of legislative power. The court, then, did right in refusing this instruction also.
[it] Itñ¡ competent tature to fur-hish a more the wron^of a forcibleDde-oftenancybe made before
Triplett and Monroe, for appellants;' Bibb, for appel-lee.
As to the instructions asked by the appellee and granted by the court, they are either the converse of some of the instructions refused to the appellant, or in perfect accordance with principles heretofore settled by this court, and, therefore, need not be rr Red.
As to the refusal of the .court below grant a new trial,?we shall only^add, that the evidence appears to have been fairly submitted to the jury, on instructions given by the court in favor of the appellants, some which were as much, if not more in their favor, than the law allows, and the finding is against them on the facts alone. If they were more doubtful, we should not be disposed to interfere; but fis they appear to us, our opinion concurs with the court below in sustaining the verdict.
The judgment must, therefore, be affirmed with costs.